# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| BRIAN E., | No. 24-cv-4010-LTS |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY[1], | |
| Defendant. | |

Brian E. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I.     BACKGROUND

Claimant was born in 1991. (AR[2] at 115.) He is a high school graduate. (*Id*. at 402.) Claimant allegedly became disabled due to a back injury with four fused vertebras, nerve damage, depression, and PTSD. (*Id*. at 122.) Claimant's onset of disability date is May 5, 2020. (*Id*. at 116.) On August 1, 2020, Claimant filed his application for DIB. (*Id*. at 115, 133.) His claim was denied originally on September 4, 2020 (*id*. at

---

[1] On February 19, 2025, Leland Dudek was named the Acting Commissioner of Social Security.

[2] "AR" cites refer to pages in the Administrative Record.

Case 5:24-cv-04010-LTS-MAR     Document 17     Filed 03/11/25     Page 1 of 26

115-120, 133), and was denied on reconsideration on December 20, 2020.  (*Id*. at 121-29, 133.)  A hearing was held on December 1, 2021.  (*Id*. at 133.)  The ALJ issued an unfavorable decision on December 14, 2021.  (*Id*. at 133-146.)  On December 14, 2022, the Appeals Council remanded to the ALJ for further consideration, among other things, of Claimant's RFC.  (*Id*. at 152-56.)

On remand, a second hearing was held on July 26, 2023, with Claimant and his attorney Chellsie Weber[3] appearing telephonically before Administrative Law Judge ("ALJ") Chris Yokus.  (*Id*. at 80-114.)  Vocational Expert ("VE") Jennifer Ruhnke also appeared at the hearing telephonically.  (*Id*.)  Claimant and the VE both testified at the hearing.  The ALJ issued an unfavorable decision on August 15, 2023.  (*Id*. at 22-34.)

Claimant requested review and the Appeals Council denied review on December 11, 2023.  (*Id*. at 1-3.)  Accordingly, the ALJ's August 15, 2023 decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

On February 21, 2024, Claimant timely filed his Complaint in this Court.  (Doc. 4.)  On September 10, 2024, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant has a disability when, due to physical or mental impairments, the claimant:

---

[3] Claimant is represented by attorney John F. Carroll on the instant Social Security appeal in this Court.

is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic

3

work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    The ALJ's Findings

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2025. (AR at 24.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of May 5, 2020. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: traumatic thoracic and lumbar fracture, status-post T-11-L-3 fusion, anxiety, depression, ADHD, PTSD, and substance abuse disorder. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 25.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine), 1.16 (lumbar spinal stenosis), 12.04 (depressive disorders), 12.06 (anxiety disorders), 12.11 (neurodevelopmental disorders), and 12.15 (PTSD). (*Id.*) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 26-27.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except he can lift 20 pounds occasionally and 10 pounds frequently. He can sit six hours, stand six hours and can walk six hours in an eight-hour workday. He can occasionally balance,

5

stoop, kneel, crouch, crawl, and climb ramps or stairs, but can never climb ropes, ladders, or scaffolds. Finally, he can perform work that does not involve driving commercial vehicles. Mentally, he can understand, follow, and complete simple repetitive routine tasks and instructions in low stress jobs (defined as work having occasional changes in work setting and no more than occasional decision making). He can also perform work involving no more than occasional contact with the public.

(*Id*. at 27.) Also, at the fourth step, the ALJ determined that Claimant was unable to perform his past relevant work. (*Id*. at 32.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including marker, routing clerk, and collator operator. (*Id*. at 33.) Thus, the ALJ concluded that Claimant was not disabled. (*Id*. at 34.)

**B.     The Substantial Evidence Standard**

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it]

6

been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## III.   DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) failing to properly evaluate Claimant's stress-related difficulties in relation to Claimant's RFC assessment; (B) failing to adequately evaluate the "Paragraph B" criteria in determining Claimant's medically determinable mental impairments; (C) failing to adequately evaluate Claimant's maximum exertional RFC; (D) relying on "conflicting testimony" from the VE; and (E) failing to resolve conflicts between the VE's testimony and the DOT. (Doc. 9-1.)

## A.  RFC – Stress Level

### 1.  Parties' Arguments

Claimant argues that the ALJ erred by failing to define or evaluate "low stress" jobs "on an individualized basis based on the specific symptoms and triggers of the Claimant." (Doc. 9-1 at 26.) Relying on Ruling 85-15, Claimant asserts that "the ALJ's RFC does not particularize 'low stress' or analyze which types of work tasks the Claimant might find stressful or define the restrictions necessary to reduce Claimant's stress." (*Id.* at 27.) Specifically, Claimant argues that the ALJ's limitation of Claimant to "low stress" jobs "does not articulate the Claimant's maximum capacity to perform basic mental activities because the decision's definition of 'low stress job' is broadly described as any job that has 'occasional changes in work setting' and requires 'no more than occasional decision making' instead of an individualized explanation of what causes stress to the claimant and what the resulting limitations are." (*Id.* at 28.)

The Commissioner notes that the ALJ limited Claimant to low stress work, defining "low stress" as "'work having occasional changes in work setting and no more than occasional decision making'" and that Claimant contends that "these restrictions fail to consider [Claimant's] 'triggers, symptoms, and reactions to certain stimuli.'" (Doc. 14 at 8.) (Quoting AR at 27 and Doc. 9-1 at 25.) The Commissioner points out, however, that Claimant, "who holds the burden of proving his limitations, does not elaborate on what these triggers, symptoms, and reactions might be, nor does he suggest what additional limitations were necessary to account for his stress." (Doc. 14 at 8.) The Commissioner concludes that "[a]s [Claimant] points to no evidence supporting a need for additional stress related restrictions, the ALJ's RFC finding should be upheld." (*Id.*)

### 2.  Analysis

Claimant cites no authority to support his interpretation of Social Security Ruling 85-15, 1985 WL 56857 (1985) requiring an "individualized explanation of what causes

8

stress to the claimant and what the resulting limitations are." (Doc. 9-1 at 28.) Moreover, the ALJ's definition of "low stress" as it relates to Claimant is individualized, as it is based on the ALJ's consideration of the record as a whole and limits Claimant to "occasional changes in work setting and no more than occasional decision making." (AR at 27.) Such individualized definition is consistent with the findings of various judges from sister districts in the Eighth Circuit. *See Lowe v. Kijakazi*, No. 4:22-cv-00653-SEP, 2023 WL 6200759, at *2-*4 (E.D. Mo. Sept. 22, 2023) (J. Pitlyk) (affirming RFC assessment including a limitation of low stress work, defining low stress as "only occasional changes in work setting"); *Martin v. Berryhill*, No. 4:16-CV-00978-DGK-SSA, 2017 WL 3704602, at *2 (W.D. Mo. Aug. 28, 2017) (J. Kays) (affirming RFC assessment including a limitation of low stress work, defining low stress as "only occasional decision-making and occasional changes in work setting"); *Hanks v. Berryhill*, No. 4:16CV152 HEA, 2017 WL 1047377, at *6-*7 (E.D. Mo. Mar. 20, 2017) (J. Autrey) (affirming RFC assessment including a limitation of low stress work, defining low stress as "only occasional decision-making and occasional changes in work setting"); *Seitz v. Colvin*, No. 5:15-cv-06151-NKL, 2016 WL 3920463, at *10-*11 (W.D. Mo. July 18, 2016) (J. Laughrey) (finding "low stress" properly defined as "only occasional decision-making and occasional changes in work setting"); *Trucks v. Colvin*, No. 4:15CV700PLC, 2016 WL 7405842, at *5-*8 (E.D. Mo. Dec. 22, 2016) (J. Cohen) (affirming RFC assessment including a limitation of low stress work, defining low stress as "only occasional decision-making and occasional changes in work setting") *Latragna v. Colvin*, No. 4:14 CV 496 JMB, 2015 WL 4771630, at *14 (E.D. Mo. Aug. 12, 2015) (J. Bodenhausen) (affirming RFC assessment including a limitation of low stress work, defining low stress as "only occasional decision-making and occasional changes in work setting").

Accordingly, I find Claimant's argument is without merit and I recommend that District Court affirm this part of the ALJ's decision.

**B.**     ***"Paragraph B" Criteria***

    ***1.***     ***Parties' Arguments***

Claimant argues that the ALJ "failed to provide an adequate evaluation of the "Paragraph B" criteria when determining the severity of [his] medically determinable mental impairments." (Doc. 9-1 at 28.) Claimant maintains that the ALJ "failed to provide appropriate rationale when it did not incorporate several pertinent findings and conclusions, as required by the special technique described in 20 C.F.R. [§] 404.1520a(C)[.]" (*Id.* at 31-32.) Claimant also argues that the ALJ "did not adequately identify the specific functional limitations that were considered in reaching a conclusion about the severity of the mental impairments." (*Id.* at 32.)

The Commissioner argues that, in his decision, the ALJ properly evaluated the "Paragraph B" criteria. (Doc. 14 at 8-13.) Specifically, the Commissioner argues that the ALJ followed the regulations and considered Claimant's "alleged functional limitations in each functional area along with the examination findings and [Claimant's] reported abilities and determined that the weight of the evidence failed to show limitations rising to the marked or extreme level." (*Id.* at 12-13.) The Commissioner asserts that Claimant "disagrees with the [ALJ's] decision, but has failed to identify a single error by the ALJ." (*Id.* at 13.) The Commissioner concludes that substantial evidence supports the ALJ's "Paragraph B" findings. (*Id.*)

    ***2.***     ***Analysis***

In his decision, the ALJ addressed the "Paragraph B" criteria as follows:

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.11 and 12.15. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B"

criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has *moderate* limitations. The claimant alleged that he has difficulty completing tasks and taking medications without reminders. However, the claimant also stated that he could perform simple maintenance, prepare meals, pay bills, go to doctor's appointments, and read. In addition, the record shows that the claimant could provide cogent, detailed, organized and responsive information about his health and could make his own healthcare related decisions without his provider's clinical concern for his cognition, attention and concentration or memory function on exams during the period of review (*E.g.*, 15F; 16F/7, 9; 22F/12, 18, 23, 34, 38, 44, 67, 72, 77, 80, 92; 23F/4, 5, 6, 8 and 9).

In interacting with others, the claimant has *moderate* limitations. Here, the claimant alleged that he has difficulty engaging in social activities and spending time in crowds. However, according to his statements, he is able to get along with others and spend time with friends and family. Finally, the medical evidence shows that the claimant has good eye contact, normal speech and thought patterns, normal motor activity, good judgment and that he is polite, cooperative and without thoughts of self-harm or harm to others during the period of review.

The claimant also has *moderate* limits in his ability to concentrate, persist, or maintain pace. The claimant contended that he has limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule. However, as noted above, the claimant also stated that he could perform simple maintenance, prepare meals, pay bills, go to doctor's appointments, and read. Here too, he could provide cogent, detailed, organized and responsive information about his health and could make his own healthcare related decisions without his provider's clinical concern for his cognition, attention and concentration or memory function on exams during the period

11

of review (*E.g.*, 15F; 16F/7, 9; 22F/12, 18, 23, 34, 38, 44, 67, 72, 77, 80, 92; 23F/4, 5, 6, 8 and 9).

Finally, the claimant has *moderate* limitations in his ability to adapt or manage himself. The claimant asserted that he has difficulties handling change and managing his mood. That said, the claimant also stated that he is able to handle self-care and personal hygiene, that he is independent in his daily activities and decision making, and that he has improved and stable moods with medication management. Again, the objective evidence in the record also shows he has appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control when taking his medications as prescribed (*E.g.*, 16F/7, 9; 22F/12, 18, 23, 34, 38, 44, 67, 72, 77, 80, 92; 23F/4, 5, 6, 8 and 9).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(AR at 26-27.)

Here, the ALJ complied with the regulations for evaluating the "Paragraph B" criteria. *See* 20 C.F.R. § 404.1520a(b), (c), (e)(4). Furthermore, I have reviewed the ALJ's citations to the record and find that the medical evidence relied on by the ALJ supports the ALJ's findings. *See* AR at 2262, 2265-66, 3591, 3597, 3602, 3613, 3617-18, 3623-24, 3646, 3651, 3656, 3659, 3677-79, 3681-82. Other evidence in the record also supports the ALJ's findings. *See id.* at 2276, 2294, 3582, 3648, 3653-54, 3658, 3670. Moreover, while Claimant addresses the four "Paragraph B" areas of functioning, *see* Doc. 9-1 at 29-32, Claimant generally states that he disagrees with the ALJ's findings and offers little to no support for his disagreements. Where Claimant does cite medical evidence, it is to two pieces of evidence where a medical source noted poor memory and noted impaired concentration. However, neither of these notations suggest let alone

support a finding of a marked or extreme limitation in the area of concentration, persistence, or pace. Significantly, Claimant cites no evidence to support such a finding.

Accordingly, I find that the ALJ properly considered and addressed the "Paragraph B" criteria in his decision. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Therefore, I recommend that the District Court affirm this part of the ALJ's decision.

## C. Claimant's RFC

### 1. Parties' Arguments

Claimant argues that the ALJ failed to "adequately evaluate the [his] maximum exertional residual functional capacity" and the ALJ's RFC assessment "is therefore unsupported by substantial evidence." (Doc. 9-1 at 32.) Claimant contends that "when determining that the Claimant could perform 'light work' the ALJ's remand decision makes several misleading and/or inaccurate statements." (*Id.* at 33.) Claimant points to various statements which he made at the administrative hearings which he claims are inconsistent with the ALJ's findings. (*Id.* at 33-34.) Claimant concludes that the medical evidence does not support the ALJ's determination that he is capable of light work. (*Id.* at 36.)

The Commissioner argues that the "physical RFC was supported by substantial evidence" and the ALJ "properly found [Claimant] had the physical ability to perform light work[.]" (Doc. 14 at 13-14.) The Commissioner asserts that Claimant does not dispute the majority of the ALJ's findings, but in arguing that the ALJ made misleading and/or inaccurate statements, Claimant is "essentially nitpicking the ALJ's well-reasoned decision." (*Id.* at 15.) The Commissioner contends that Claimant is simply "asking the Court to see the record as he sees it." (*Id.* at 16.) However, the Commissioner points

13

out that "it is not the Court's role to re-weigh the evidence, rather to determine if the ALJ's decision was supported by substantial evidence[.]" (*Id.*)

### 2. Relevant Law

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

### 3. Analysis

In making his RFC determination for Claimant, the ALJ supported his determination as it pertains to Claimant's physical limitations as follows:

> The claimant previously testified at his December 2021 hearing that he is disabled since his May 2020 motor vehicle accident, with the suggestion that his physical therapy after his lumbar fusion ended prematurely secondary to insurance barriers rather than his medical improvement by April 2021.
>
> He also testified at his December 2021 hearing he has significant pain relief with medication management, that he can lift 25 pounds without difficulty, and that he can walk a mile, but needs to change positions from seated to standing every 20 minutes. However, he reported some balance deficits in

14

standing too long on one foot. Otherwise, he testified he has significant anxiety, is easily irritated and impatient, especially if in pain, and that he was no longer using methamphetamines at that time.

More recently, the claimant testified at his July 2023 hearing that he had had essentially no medical treatment since his prior hearing decision, but for tele-health visits when renewing his pain medications. Additionally, the claimant testified he had had no medication changes since his prior hearing, that he does not drive because he does not have a car and that he typically walks to where he needs to go during the day.

The claimant testified he last participated in physical therapy in April 2021 because he stopped improving and had poor stamina, noting he never regained the ability to run. However, at his July 2023 hearing the claimant testified he could walk two miles before needing to rest, that he can stand 45 minutes, and could only lift and carry a case of water. Finally, he testified he is sober from methamphetamines for one year and that he has difficulty tolerating loud noise, is irritable and withdrawn when under stress, and that he is forgetful.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. . . .

[B]y April 2021 and by his own account, he was thereafter without pain, without difficulty performing daily activities, and no longer using a cane (*E.g.*, 22F and 23F).

Consequently, the claimant's statements about the intensity, persistence, and limiting effects of his back pain symptoms, to the extent he suggests they persist and preclude his return to less demanding work than welding, are inconsistent because the medical record indicates he had a very good response to surgical fusion and has managed his symptoms with conservative care ever since, as evident in the claimant's self-reports that he has no ongoing back pain when compliant in care and if not jogging around town (*E.g.*, 7F/748).

Additionally, his statements suggesting he has ongoing severe back pain are inconsistent with clinical observations in his physical therapy and routine care treatment record showing he has a normal gait on even and on uneven terrain, is able to jog, does modified burpees, can quick step on floor ladders and laterally speed skate when discharged from physical therapy, suggesting he has no ongoing physical therapy since April 2021 because he has no ongoing medical need for therapy, rather than being prematurely discharged from care secondary to insurance limits as he suggested at the time of his hearing (*E.g.*, 13F and 20F/3).

In fact, even after reporting a fall on stairs in July 2020, the claimant has no complaints or clinical concerns on updated imaging warranting changes in care and continues to report he has no activity limitations when prescribed Gabapentin and narcotic pain medications since that time (*E.g.*, 19F; 22F/34 and 44).

He has reported increased pain at times when his pain management is suspended secondary to illicit drug use after drug screens showed positive methamphetamine *but negative opiates* causing his provider's concern (19F/143, *emphasis added*). Similarly, the claimant reported some pain after he self-suspended his use of Gabapentin in May 2021, but since restarting has no ongoing complaints or concerns in this regard (22F/5 and 6).

In this context, the claimant reports no significant pain even when demonstrating an ability to jump, an ability to quickly skate laterally side to side, an ability to take quick ladder steps on the floor and tolerates light "running" activities within months of his recuperation from surgery, again suggesting his physical therapy ended because he had achieved his treatment goals, (19F/112 and 114).

However, after "jogging" to his physical therapy appointments the claimant has reported heightened symptoms at times, but has no such symptoms persisting when participating in activities that do not exceed the functional limitations established for him in this decision (20F/572 and 863).

For example, in March 2021, when not running to his appointment the claimant reported he was in no pain, had no side effects, that he was doing

well, and reported he is sober when compliant in his use of ADHD medications without clinical concern for his motor function, mental function or cognition less than one year after his alleged onset date (19F/2).

He also stated in physical therapy that his back was "ok" and he is able to perform modified "burpees" about the time his participation in physical therapy came to an end, despite moderate cervical disc disease shown on imaging at that time (20F/863, 930 and 951). In April 2021 the updated imaging of his thoracic and lumbar spine showed no significant disc disease and no significant spinal canal stenosis (20F/1043 and 1044).

Thereafter, the claimant has pain management by Dr. Wolff and consistently demonstrates normal cognition, consistently reports his pain is well managed without side-effects and that he is sleeping and doing well with no pain (*E.g.*, 22F/1, 5, 10, 15, 20, 33, 38, 44, 49, 54, 60, 64, 69, 74, 79, 84, 89 and 23F/5-7).

Moreover, he reports his improved mood stability since sober and compliant in care and has no contemporaneous complaints or clinical concerns warranting updated imaging, specialized care, changes in medication management, unscheduled or emergent care or Dr. Wolff's recommended limitations for him at work during the relevant period (E.g., 22F/1, 5, 10, 15, 20, 33, 38, 44, 49, 54, 60, 64, 69, 74, 79, 80, 84, 89, 92 and 23F/5-7).

Finally, his daily activities include long walks, bicycling, cleaning, and driving up to an hour at a time within one year of his alleged onset date. To this end, the claimant reported he has no ongoing primary care since December 2020 "because he has not needed" primary care since that time, when returning to care only after receiving his December 2021 hearing decision denial (22F/38).

To summarize, the claimant improved from his significant traumatic back injury and has good motor function, and well managed pain symptoms without side effects or impaired cognition within 12 months of his onset date. Since April 2021, he has no complaints warranting changes in care, updated imaging, emergent care, medication changes or his prescription use of a cane.

17

Although the record supports a finding he is unable to return to work as a welder, the claimant provided no evidence or well supported opinion suggesting he has an inability to perform less demanding work during the period of review. By limiting the claimant to light work involving no climbing ladders, ropes or scaffolds, no driving commercial vehicles and involving no more than occasional postural activities, I have adequately accounted for the claimant's severe traumatic back injury and T11-L3 fusion.

I did not account for the claimant's statements suggesting he must often alternate positions, is unable to stand more than 45 minutes, needs to walk with a cane at times and has cognitive deficits, in part from use of pain medications, because his statements are not consistent with his contemporaneous reports, unremarkable clinical physical and mental examinations, his ability to manage his symptoms with conservative care since April 2021, and his self-reported daily activities during the relevant period.

(AR at 28-30.)

It is clear from the ALJ's decision that he thoroughly reviewed and considered Claimant's medical history, particularly as it related to pain and Claimant's functional abilities. *See id*. Claimant's argument that the ALJ's decision is not supported by substantial evidence comes down to a few minor points that either he interprets differently from the ALJ or where he fails to consider all the evidence that the ALJ considered. For example, at the December 2021 administrative hearing, when asked how medication helps his pain, Claimant stated "it helps my pain a lot. I feel somewhat normal." (*Id*. at 67.) Claimant also stated that he does not push his limits and without medication "I can't do anything at all." (*Id*.) I find no issue with the ALJ's finding that Claimant testified to pain relief with medication. As is clear from the ALJ's decision, the ALJ's finding is supported by substantial evidence on the record as a whole regardless of Claimant's differing interpretation. *See Guilliams*, 393 F.3d at 801 (providing that even if different conclusions could be drawn on an issue, the ALJ's conclusions should be upheld when

18

they are supported by substantial evidence on the record as a whole). Similarly, Claimant also stated "[m]y lifting is pretty much still stuck at the 25 limit. I don't typically want to carry anything more than that because I don't want to risk anything." (AR at 59.) Claimant complains that the ALJ stated he could lift 25 pounds "without difficulty." (*Id.* at 28.) I am unpersuaded by Claimant's complaint. Claimant never said either way that he could or could not lift 25 without difficulty. He stated that his lifting limit was 25 pounds. He also stated that could carry 25 pounds a medium distance (from his car to the kitchen) once or twice before needing to take a break and that he had never tried carrying 25 pounds such a distance twice. (*Id.* at 59.) Based on the foregoing testimony, I find no issue with the ALJ's finding. *See Guilliams*, 393 F.3d at 801. Claimant also complains that the ALJ's statement that Claimant "reported some balance deficits" failed to also discuss an incident where Claimant fell down stairs at his parents' house. (AR at 28, 62-63.) Additionally, Claimant points out that he testified that he cannot stand on one foot for long periods of time, cannot take steps two at a time, and has difficulty stepping over things. (*Id.* at 64.) Having reviewed the testimony, I find that the ALJ's finding that Claimant has "some balance deficits in standing too long on one foot" is consistent with Claimant's testimony. (*Id.* at 28, 62-64.) To that end, Claimant also fails to explain or point to evidence that would contrary to the ALJ's RFC finding that Claimant can "occasionally balance." (*Id.* at 27.) Next, at the July 2023 administrative hearing, Claimant testified that "[a]s far as walking goes recently I've made it about two miles but I limit as far as walking before I need to, I need to rest." (*Id.* at 91.) Claimant also stated that walking two miles is hard on his feet and after walking that distance he needs to rest in a recliner. (*Id.*) Claimant further testified that "like two miles is about the most I've ever been able to walk and standing the same thing, about like 45 minutes is the longest I've been able to stand" before needing a break due to pain in his feet. (*Id.* at 91-92.) In his decision, the ALJ stated that "claimant testified he could walk two miles

before needing to rest" and that "he can stand 45 minutes." (*Id.* at 28.) I find no issue with the ALJ's decision on Claimant's statements regarding walking two miles and standing for 45 minutes, as the ALJ's finding is consistent with Claimant's testimony. Finally, Claimant correctly points out that the ALJ's citation to "7F/748" does not exist. However, this minor error does not undermine the ALJ's thorough findings or the multitude of correct citations to the record which supports his findings. *See id.* at 28-30. Overall, I find Claimant's argument to be without merit and the ALJ's findings to be supported by substantial evidence on the record as a whole. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination. . . . In the face of such determinations, we must strive to harmonize statements where possible; we may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies.").

Moreover, in determining Claimant's RFC, the ALJ thoroughly addressed and considered Claimant's medical history and treatment for his complaints. (AR at 27-32.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making his overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 28-31.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC

determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See id.* at 801. It is not for this Court to reweigh evidence. Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

## D.    VE Testimony

Claimant argues that his "due process rights were violated when the vocational expert gave apparently conflicting testimony which the ALJ relied on unquestioningly." (Doc. 9-1 at 36.) Claimant contends that the VE "gave misleading, incomplete, and contradictory testimony." (*Id.* at 37.) Specifically, Claimant argues that:

> First, [the VE] testified that the job of marker is still performed the way it was at the time the DOT was last updated. . . . She then admitted that there was a possibility that there is technology used now, that was not used then. . . . Without explaining what technology may be used, or how long it would take to learn the technology, she added "it's—they're simple tasks. . . ." She then back pedaled and said that a marker would not need to learn any technology.

(*Id.* at 37-38.) Claimant complains that the ALJ "asked no follow-up questions about these contradictions" and argues that the ALJ's "claim that the vocational expert's testimony is consistent with the DOT is false, and the ALJ did not elicit a reasonable explanation for the inconsistency, which is reversible error." (*Id.* at 38.)

At the hearing, Claimant's attorney and the VE had the following exchange:

Q:    And then specifically with the job of marker, have there been changes to that job description since the DOT last updated it?

A:    You know what, I think the job tasks are still performed the same way at least. Let me look real quick. Yes. I believe that's still performed in a pretty similar fashion.

Q:    Okay. Are the current updated tasks of a marker, is that no discussed in like a conversation with employers and marks, and like current markers?

| A: | I'm not sure what you're— |
|---|---|
| Q: | I guess you were talking about your experience with markers and those who employ markers in order to come up with the percent of jobs that would allow for more sitting. And so, I was trying to understand if those conversations or sources that you are speaking of if that does not include the current tasks and way of performing that position? |
| A: | Yes, it would be. |
| Q: | Okay. I'm looking at the date last update [19]77 and I'm just picking that, some of that may have probably become computerized since then, would I be off based with that? There's probably more technology involved with tagging and marking what they would have done in [19]77? |
| A: | That's certainly possible but basically it's—they're pretty—they're simple tasks. It's marking, putting stickers, putting price tags, that's basically it. Not a lot of that has— |
| Q: | Okay. So, they're— |
| A: | --changed. Not a lot of things to change. |
| Q: | Okay. So, you—so in your professional experience there wouldn't be any need to like learn or understand how to use a specific piece of technology that would fix them changing prices or tagging items with prices? |
| A: | No. |
| Q: | You don't have to learn any technology? |
| A: | No. I think it's—if that was involved that might be a different job classification. |

(AR at 112-113.)

I see no conflicting, misleading, incomplete, or contradictory testimony. Thus, Claimant's argument is without merit. Accordingly, I recommend that the District Court affirm on this issue.

**E.  *VE Testimony and DOT Conflict***

**1.  *Parties' Arguments***

Claimant argues that the "ALJ erred in determining [he] was [not] disabled at step five of the sequential evaluation process because [the ALJ] improperly relied on the

22

Vocational Expert's testimony when there was an apparent conflict between the VE's testimony and the Dictionary of Occupational titles that the VE did not resolve, therefore the decision was not supported by substantial evidence." (Doc. 9-1 at 38-39.) Specifically, Claimant argues that his RFC limited him to understanding, following, and completing simple, repetitive routine tasks and instructions and such limitations are inconsistent with reasoning level 2 jobs, like the jobs the VE testified Claimant could perform. (*Id.* at 39.) Claimant maintains that "the VE testified that the hypothetical individual could perform a job that the DOT classifies as requiring a reasoning ability than the limitations in his RFC, which is an 'apparent conflict' between the VE's testimony and DOT's job description that the VE did not resolve." (*Id.* at 40.)

The Commissioner asserts that Claimant's argument is "without merit." (Doc. 14 at 17.) Relying on *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010), the Commissioner argues that the Eighth Circuit "found no direct conflict between a hypothetical question including 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' and the vocational expert's identification of jobs with instructions that, while potentially detailed, were not complicated or intricate." (*Id.* at 19.) The Commissioner maintains that the "factual similarities between [Claimant's] case and Moore require dismissal of [Claimant's] point of error." (*Id.*) (citing *Galloway v. Kijakazi*, No. 20-CV-00059-CJW, 2021 WL 5278545, at *29 (N.D. Iowa Sept. 2, 2021), *report and recommendation adopted*, No. 20-CV-59-CJW-MAR, 2021 WL 4399719 (N.D. Iowa Sept. 27, 2021), *aff'd*, 46 F.4th 686 (8th Cir. 2022); *Gilbert v. Saul*, No. C18-2045-LTS, 2019 WL 4751552, at *5, *19 (N.D. Iowa Sept. 30, 2019)).

### 2. Relevant Law

At "step five of the sequential evaluation process the burden shifts to the Commissioner to show that the claimant can perform other types of work and that the particular type of work is available in the national economy." *Crawford v. Colvin*, 809

F.3d 404, 409 (8th Cir. 2015). An ALJ "'may rely on a vocational expert's response to a properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform.'" *Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (quoting *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004)). However, "an ALJ may not rely on a vocational expert's testimony about the requirements of a job if an 'apparent unresolved conflict' exists between that testimony and the job's description in the [DOT]." *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018). "If there is an 'apparent unresolved conflict' between [vocational expert] testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the vocational expert] provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.'" *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (quoting SSR 00-4p, 2000 WL 1898704, at *2-4 (Dec. 4, 2000)); *see also Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1003 (8th Cir. 2018) ("SSR 00-4p places an affirmative responsibility on the ALJ 'to ask about "any possible conflict" between [vocational expert] evidence and the DOT, and to obtain explanation for any such conflict, before relying on [vocational expert] evidence to support a determination the claimant is not disabled.'") (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014)).

### 3. Analysis

In his decision, the ALJ determined Claimant's RFC as follows:

[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except he can lift 20 pounds occasionally and 10 pounds frequently. He can sit six hours, stand six hours and can walk six hours in an eight-hour workday. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but can never climb ropes, ladders, or scaffolds. Finally, he can perform work that does not involve driving commercial vehicles. Mentally, he can understand, follow,

and complete simple repetitive routine tasks and instructions in low stress jobs (defined as work having occasional changes in work setting and no more than occasional decision making). He can also perform work involving no more than occasional contact with the public.

(AR at 27.) Further, in his decision, at step five, the ALJ explained that he:

asked the vocational expert whether jobs exist in the national economy for an individual with claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: Marker . . .; Routing clerk . . .; [and] Collator operator.

(*Id.* at 33.) The ALJ determined that the "vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Any conflicts with regard to postural or environmental limitations have no significant impact on the relevant job base. (*See* SSRs 83-14, 85-15 & 96-9p)." (*Id.* at 33-34.) The ALJ also determined that "[b]ased on the testimony of the vocational expert, [the undersigned] conclude[s] that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 34.)

Here, the ALJ's RFC assessment limited Claimant to "understand[ing], follow[ing], and complet[ing] simple repetitive routine tasks and instructions in low stress jobs." (*Id.* at 27). Such limitations are consistent with jobs requiring level 2 reasoning. *See Moore*, 623 F.3d at 604 (finding no direct conflict between a limitation of "simple, routine and repetitive work activity" and jobs requiring level 2 reasoning); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no conflict between a limitation to unskilled work with the ability to follow "simple, concrete instructions" and jobs requiring level 3 reasoning); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) (same). Additionally, Claimant's reliance on *Lucy v. Chater*, 113 F.3d 905 (8th

25

Cir. 1997) is misplaced, as *Lucy* did not even involve a vocational expert's testimony because the ALJ applied the Medical-Vocational Guidelines. *Id*. at 909. Indeed, the Eighth Circuit reversed because the ALJ determined "Lucy was not disabled without consulting a vocational expert to assess Lucy's residual functional capacity in light of his significant nonexertional impairments." *Id*. Based on the foregoing, I find no "apparent unresolved conflict" between the vocational expert's testimony and the DOT and no error in the ALJ's step-five determination. Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 11th day of March, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa